# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| WORLDWIDE DIRECT, INC., *et al.*, | § | Case No. 99-00108 (MFW) through |
| | § | Case No. 99-00127 (MFW) |
| Debtors. | § | (Jointly Administered) |
| | § | |

## SECOND SUPPLEMENTAL STATUS REPORT OF
## THE POST-CONFIRMATION TRUSTEE OF
## THE WORLDWIDE DIRECT LIQUIDATION TRUST

Harrison J. Goldin and Goldin Associates, LLC, the duly appointed post-confirmation trustee (the "Trustee") of the Worldwide Direct Liquidation Trust (the "Trust") pursuant to the Second Amended Consolidated Liquidating Chapter 11 Plan for Smartalk Teleservices, Inc. and Affiliates (the "Plan"), submits this Supplemental Status Report and respectfully states as follows:

### Purpose of the Report

1. The purpose of this report is to provide the Court with a summary of the progress of these cases since the Effective Date of the Plan (as defined below), as well as a statement of the remaining tasks to be completed in order for the administration of the Trust to be completed and have these cases closed.

### Confirmation of the Plan and Appointment of the Trustee

2. By order dated June 7, 2001 (the "Confirmation Order"), the Court confirmed the Plan for Smartalk Teleservices, Inc. and its affiliates. The Trust was established on June 30, 2001 (the "Effective Date") upon execution of the Liquidating Trust Agreement and Declaration of Trust, as provided in the Plan. The Trust was created to provide for the orderly liquidation of

the assets of Smartalk and its nineteen domestic affiliates (together, the "Debtors")[1] and to distribute the proceeds to Trust beneficiaries, who are principally the former creditors of the Debtors.[2] As more specifically described in the Plan and the related Disclosure Statement, the Debtors (which were substantively consolidated by order of the Court) transferred their remaining assets, third party claims, and causes of action (the "Trust Assets") to the Trust, a grantor trust which is directed by the Trustee. The Trustee is overseen by a Trust Board consisting of creditors appointed by the Court. The Plan specifically provides for the initiation and/or prosecution of third party claims and causes of actions by the Trust.

3. The Trustee previously filed a Supplemental Report of Post-Confirmation Trustee of Worldwide Direct Liquidation Trust dated February 21, 2007.

4. As of the date of this Status Report, the Trust has made distributions of approximately $145.3 million. This consists of approximately $141.8 million, or approximately 60.04%, of Allowed General Unsecured Claims and about $3.5 million of Secured, Priority and Administrative Claims. A summary of distributions to general unsecured creditors follows:

| Date | Distribution |
|---|---|
| November, 2001 | 24.39% |
| May, 2002 | 2.18% |
| December, 2002 | 4.47% |
| June, 2003 | 2.10% |
| September, 2003 | 2.56% |
| June, 2004 | 2.41% |
| September, 2004 | 6.44% |
| April 2008 | 15.49% |
| Total Percentage Distributed: | 60.04% |

---

[1] The Debtors, in addition to SmarTalk, consist of the following nineteen (19) entities: Worldwide Direct, Inc.; ConQuest Communications Corp.; ConQuest Long Distance Corp.; ConQuest Operator Services Corp.; ConQuest Operator Services, L.P.; ConQuest Telecommunication Services Corp.; Creative Network Marketing, Inc.; GTI Telecom, Inc.; SmarTalk Acquisition Corp.; SmarTalk (Delaware) Corporation; SmarTalk USPS Sales Co. (f/k/a American Express Telecom, Inc.); SmarTel, Inc.; SmarTel Communications, Inc.; SmarTel Communications of Virginia, Inc.; SmarTel International, Inc.; SMTK Acquisition Corp.; SMTK Acquisition Corp. III; SMTK NY-1 Corp.; and USA Telecommunications Services, Inc. (d/b/a The Debit Cellular Network).

5. At the Effective Date, there were approximately $170 million in disputed claims asserted against the Debtors' estate, not including numerous disputed claims filed in unknown or unliquidated amounts and numerous claims that the Trustee determined to allow. The Trustee and its professionals investigated and, where appropriate, objected to numerous disputed claims that had not previously been the subject of formal objection. The Trustee also continued to prosecute objections that had previously been made by the Debtors or the Creditors Committee. As a result of these efforts, the Trustee reduced claims against the estate by approximately $136.5 million and allowed disputed claims in the approximate amount of $32 million. The Trustee also obtained the disallowance of numerous claims filed in unknown or unliquidated amounts.

**Remaining Outstanding Proceedings in the Cases**

6. As of this date, 99% of prepetition claims have been resolved; there are virtually no remaining disputes before the Court. The only remaining disputed matters are as follows:

   a. Matters Involving Former Officers and Directors (Tax and General Indemnification Claims of Lorsch, et. al)

      i. Indemnification Reserve Claims. Several former directors and officers of the debtors, including Robert H. Lorsch, Ahmed O. Alfi, and Richard M. Teich (collectively the "Lorsch Claimants") filed proofs of claim based on alleged indemnification rights under a D&O Settlement Agreement entered into between, among other parties, the Trustee and the Claimants. This Court approved the D&O Settlement Agreement on or about July 21, 2003 (Docket No. 3097). Pursuant to the D&O Settlement Agreement, the claimants withdrew virtually all of their claims in exchange for broad releases. There was also established an Indemnification Reserve for certain limited possible indemnification claims preserved by the D&O Settlement Agreement. Thereafter, the requisite conditions to terminate the Indemnification Reserve were met, and the Trustee made demand upon the Lorsch Claimants and other potential claimants to withdraw any remaining claims. As the claims were not withdrawn, the Trustee filed an omnibus objection to the claims on October 30, 2009 (Docket No. 3425).

Lorsch Claimants responded in opposition and thereafter commenced Adversary Proceeding No. 09-52841-MFW in this Court seeking a resolution of the same issues raised in the Omnibus Objection to Claims. On April 1, 2010, the Trustee moved for summary judgment on the central issues in the parties' disputes, seeking a determination as a matter of law that the Indemnification Reserve has been terminated and the Lorsch Claimants and any other claimants have no claims whatsoever under the D&O Settlement Agreement or against any reserve. On May 11 and May 13, the Trustee filed a request for oral argument and a notice of completion of briefing. A copy of the adversary proceeding docket is attached for reference.

ii. <u>Lorsch Tax Indemnification Claim</u>. On or about July 16, 1999, Lorsch, a former director of one more of the Debtors, filed the Lorsch Tax Claim as a priority claim under 11 U.S.C. § 507(a)(8) in an unknown amount for the benefit of all domestic governmental taxing authorities to which the Liquidating Trust, as successor to the Debtors, may be liable. Lorsch asserted that he may be a co-obligor on such claims. On June 30, 2002, the Trustee filed its initial objection to the Lorsch Tax Claim. The Trustee is aware of only one assessment made against Lorsch on an alleged tax liability of the Debtors, which the Trustee subsequently investigated and paid. Therefore the Trustee filed a first amended objection to the Lorsch Tax Claim on October 30, 2009 (Docket No. 3425) which has been adjourned inasmuch as it has been taken to be related to the Indemnification Reserves Claims.

7. The Trustee has contended for some time now that these chapter 11 cases are ripe for completion, a final distribution and the closing of the case through a final decree. Indeed, the Trustee filed its motion for final decree on November 12, 2009 (Docket No. 3431) with a view that confirming the termination of the Indemnification Reserve and the expungement of any indemnification claims would be expeditious. Unfortunately, the Lorsch Claimants have persisted in their efforts to pursue claims not covered by the D&O Settlement Agreement.

4

8. In any event, at this juncture the Trustee is confident that once the Court has an opportunity to dispose of the pending Motion for Summary Judgment, the case can be brought to an end swiftly.

Dated: August 10, 2010                    By:   /s/ Harrison J. Goldin
                                          Harrison J. Goldin, as Trustee
                                          Goldin Associates, LLC
                                          400 Madison Avenue, 10th Floor
                                          New York, NY 10017